IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALI ODEH, and OSAMA "SAM" ODEH, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:06-CV-0225-K |
| | § | |
| RICHARD B. ROPER, et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Order of Reference, this case has been referred to the United States Magistrate Judge. Before the Court is the Federal Defendants' Motion to Dismiss, filed June 30, 2006. The Federal Defendants are Richard Roper ("Roper"), United States Attorney for the Northern District of Texas; Charles M. Bleil ("Judge Bleil"), United States Magistrate Judge; Terry Means ("Judge Means"), United States District Judge; A. Joe Fish ("Judge Fish"), Chief United States District Judge; J. Michael Worley ("Worley"), Assistant United States Attorney for the Northern District of Texas; Angela Henson ("Henson"), Assistant United States Attorney for the Northern District of Texas; Becky Fitzhugh ("Fitzhugh"), an employee of the United States courts; Janey M. Baggett ("Baggett"), an employee of the United States courts; Charles Fulbruge ("Fulbruge"), Clerk of the Court of Appeals for the Fifth Circuit; Allison Lopez ("Lopez"), Deputy Clerk for the Court of Appeals for the Fifth Circuit; and Scott Springer ("Springer"), Senior Special Agent with the Bureau of Immigration and Customs Enforcement/Department of Homeland Security. The Federal Defendants filed a joint motion to dismiss, and each Federal Defendant also filed an individual motion to dismiss. Plaintiffs Ali Odeh and Sam Odeh did not file responses.

**BACKGROUND**

The Odeh family engaged in the business of exporting used vehicles to Kuwait. (*Pl.'s Am. Compl.* at 3.)  Ali Odeh and his sons, including Sam Odeh, are naturalized United States citizens. (*Id.* at 4.)  In 1996, the Odeh family was prosecuted for violating federal export laws. (*Id.* at 5.) Plaintiffs claim that the prosecution was fraudulent and was initiated to help the Kuwait royal family destroy the Odehs' business. (*Id.* at 4.)  As part of the criminal prosecution, multiple searches and seizures of the Odehs' property occurred. (*Id.* at 4-5.)

Plaintiffs claim that Defendants conspired to take the following improper actions during the course of the prosecution.  Defendants fabricated a false lien notice, which was created for the purpose of concealing "the improper release of vehicles to the U.S. Customs." (*Id.* at 6.)  Roper, Worley, and Springer initiated a criminal prosecution against the Odehs even though they had no evidence indicating that the Odehs had violated export laws. (*Id.*)  Roper encouraged Florida officials to pursue state forfeiture actions against the Odehs. (*Id.*)  Roper and Evans did not seek an indictment from a grand jury and instead fabricated a false indictment. (*Id.* at 7.)

Plaintiffs claim that their prosecution was based upon allegations that they re-set the odometers on the cars they exported but that Defendants had no evidence of such activity. (*Id.* at 5.)  Plaintiffs allege that Roper, Springer, Judge Bleil, and "others" redacted paperwork to reflect that the prosecution was based upon the alteration of odometers, whereas the prosecution actually had no proper basis. (*Id.* at 12.)  Plaintiffs' complaint seems to indicate that Ali Odeh and his sons were convicted and that Sam Odeh was convicted of a "misprision" charge in 1998, when he returned from Kuwait. (*Id.* at 15-16.)  In the process of Sam's prosecution, Plaintiffs allege that Defendants conspired to alter tape recordings of the proceedings and to tamper with the records. (*Id.* at 16.)  Sam ultimately plead guilty to the charges before Judge Maloney. (*Id.* at 17.) Plaintiffs

2

claim that Defendants conspired to "steal the case from the bench of the U.S. Judge who had lawful jurisdiction." (*Id.*)

Sam Odeh filed a coram nobis motion on June 9, 2004, in the Northern District of Texas, Dallas Division. (*Id.* at 18.) Plaintiffs state that this motion was "a mere continuation of the criminal case against [Sam]." The case was assigned to Judge Lynn. (*Id.*) The motion challenged the Odehs' convictions because they were the result of fraud. (*Id.*) Plaintiffs state that Defendants conspired to fraudulently assign Sam's motion to Judge Bleil, although he could not properly exercise jurisdiction over it. (*Id.*) Plaintiffs allege that Judge Bleil incorrectly construed the motion as a petition in order to provide a basis for Judge Bleil to exercise jurisdiction over the motion. (*Id.* at 19.) Plaintiffs state that Judge Fish assisted Judge Bleil in misconstruing the motion as a petition. (*Id.*) Plaintiffs allege that Judge Fish and Judge Bleil procured false entries in court records to conceal their deliberate misconstruction of Sam's motion. (*Id.*) Plaintiffs claim that Judge Bleil took actions to ensure that Judge Means presided over the case in a "ploy to reverse-refer the case" to Judge Means. (*Id.* at 20.) During this time, Roper instructed Henson to prepare a "Response in Opposition" to Sam's motion, and Plaintiffs argue that Henson never entered her notice of appearance in the case, in violation of the Federal Rules of Civil Procedure. (*Id.*) Plaintiffs accuse Judge Bleil of destroying the case file seven weeks after Sam filed the motion, contrary to the requirement that "magistrate cases . . . be preserved for twenty years." (*Id.*) Judge Bleil recommended dismissing Sam's motion, which Plaintiffs argue was improper because Judge Bleil did not address the substance of the motion. (*Id.* at 21.) Judge Means adopted Judge Bleil's recommendation. (*Id.*)

Sam Odeh appealed Judge Means' decision to the United States Court of Appeals for the

Fifth Circuit. (*Id.* at 22.) Plaintiffs allege that "an unknown secretary" in the United States Attorney's office forged a letter in Henson's name, stating that Henson had not appeared in the lower court and that Henson did not intend to file a brief in opposition to Sam's appeal. (*Id.*) Plaintiffs state that Fulbruge, by and through Lopez, sent a letter to Henson, advising Henson that she did enter an appearance in the lower court. (*Id.*) Fulbruge and/or Lopez then unilaterally granted Henson an extension of time to file a brief after time to file had expired. (*Id.*) Plaintiffs state that, when Henson did file a brief, the brief included false statements that Judge Lynn properly referred the case to Judge Bleil. (*Id.* at 23.) Plaintiffs claim that Defendants were payed by Kuwait officials to violate Plaintiffs' due process rights.

Plaintiffs initiated this action pursuant to *Bivens*[1] and 42 U.S.C. § 1983 on March 31, 2006, and filed an amended complaint on April 28, 2006. In addition to the Federal Defendants, Plaintiffs named the following as Defendants: Timothy Evans, Michael Heiskell, Timothy Spaulding, and Gabrielle Taylor. Plaintiffs claim that Defendants violated their Fifth Amendment rights to not be held to answer for a crime unless on presentment of indictment to a grand jury, their Fifth Amendment due process rights, their Sixth Amendment rights to effective assistance of counsel, and their Sixth Amendment rights to be informed of the charges against them. (*Id.* at 24.)

The Federal Defendants argue that the Court should dismiss Plaintiffs' claims as frivolous. (*See Defs.' Mot.* at 8-9.) Defendants also argue that the Court should dismiss Plaintiffs' claims for insufficiency of service of process (*id.* at 9-11), for failure to state a claim (*id.* at 12-14), as barred by the relevant statute of limitations (*id.* at 14-15), and as barred by the doctrine stated in *Heck v.*

---

[1] *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

*Humphrey*, 512 U.S. 477 (1994). (*Id.* at 15-18.) The Federal Defendants also make claims of immunity in their individual motions to dismiss.

## STANDARD OF REVIEW

When considering a motion to dismiss, the Court accepts as true the factual allegations plead by the non-moving party and any reasonable inferences that the Court can draw from the factual allegations. *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 437 (N.D. Tex. 2004) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). The non-moving party "must plead specific facts, not mere conclusory allegations" to survive a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The movant cannot easily prevail because the law does not favor motions to dismiss. *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 926 (5th Cir. 1988). Courts should not grant a motion to dismiss unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Since Plaintiffs in this case are proceeding *pro se*, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The Court has an obligation to construe *pro se* plaintiffs' briefs more permissively and to make more allowances. *AMX, Int'l, Inc.*, 7 F.3d at 75. "[P]*ro se* litigant[s] [are] subject to less stringent standards than [those] represented by counsel." *Id.* (citing *Hughes v. Rowe*, 449 U.S. at 9).

**I.    Does Absolute Judicial Immunity or Qualified Immunnity Bar Plaintiffs' Claims Against Judge Fish, Judge Means, and Judge Bleil?**

In their individual motions to dismiss, Judge Fish, Judge Means, and Judge Bleil argue that judicial immunity bars Plaintiffs' claims against them. (*See Judge Fish's Mot.* at 2-4; *Judge Means' Mot.* at 3-7; *Judge Bleil's Mot.* at 4-6.) Judges have absolute immunity from suit and the assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). Judges receive absolute immunity even against accusations that they acted maliciously or corruptly. *Mireles*, 502 U.S. at 11. Absolute immunity extends to all judicial tasks of judges but not to administrative or executive tasks. *See Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). "Judicial immunity can be overcome in two sets of circumstances: (1) 'a judge is not immune for liability for non-judicial actions . . .'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Ballard*, 413 F.3d at 515 (quoting *Mireles*, 502 U.S. at 11-12).

Plaintiffs' accusations against Judge Fish include that Judge Fish had Sam Odeh's coram nobis motion docketed as a civil mandamus matter and fabricated a filing fee and that Judge Fish placed the motion on Judge Bleil's docket without authority to do so. (*See Judge Fish's Mot.* at 5.) Plaintiffs' accusations against Judge Means include that Judge Means transferred Sam Odeh's motion from Judge Lynn's docket to his own when he did not have jurisdiction over the case and that he adopted Judge Bleil's report denying the requested relief. (*See Judge Means' Mot.* at 5-6.) Plaintiffs' accusations against Judge Bleil include that Judge Bleil destroyed Sam Odeh's case file; Judge Bleil helped Judge Means transfer Sam's case to Judge Means' docket; Judge Bleil falsified court records; and Judge Bleil improperly recommended denying Sam's motion. (*See Judge Bleil's Mot.* at 5-6.)

The Court first must examine whether the judges' conduct is properly classified as the

performance of judicial functions. Four factors guide the Court's analysis when determining whether judges performed judicial functions:

> (1) whether the precise act complained of is a normal judicial function;
>
> (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;
>
> (3) whether the controversy centered around a case pending before the court; and
>
> (4) whether the acts directly related to a visit to the judge in his official capacity.

*Malina*, 994 F.2d at 1124. Based upon an examination of these factors, Judge Means and Judge Bleil's alleged actions occurred while performing judicial functions. The allegations concerning improper transfer of Sam Odeh's motion and improper denial of his motion are routine judicial functions, most likely occurred within Judge Means and Judge Bleil's chambers, clearly were centered around a pending case, and related to a visit to Judge Means and Judge Bleil in their official capacities. In addition, Plaintiffs' allegation that Judge Bleil altered and destroyed court records does not overcome Judge Bleil's judicial immunity because the claimed conduct still was performed in connection with a case before Judge Bleil. Judicial immunity bars even suits based upon malicious or corrupt conduct of judges. *Mireles*, 502 U.S. at 11.

In addition, the Court concludes that Plaintiffs have not plead sufficient facts to illustrate that Judge Means and Judge Bleil acted in the complete absence of jurisdiction. Other than conclusory allegations, which are insufficient to survive a motion to dismiss, Plaintiffs do not specify why Judge Means and Judge Bleil lacked jurisdiction. As Judge Means points out in his motion to dismiss, Judge Lynn originally had the case, and Plaintiffs do not challenge her jurisdiction. (*See Judge Means' Mot.* at 6.) If Judge Lynn had jurisdiction, it is unclear why Judge Means, who is also a United States District Judge, would lack jurisdiction. Because the Court concludes that Judge Means and Judge Bleil's actions occurred in connection with the performance of judicial functions

and that they did not act in the complete absence of jurisdiction, the Court finds that absolute judicial immunity bars Plaintiffs' claims against them.

As for Plaintiffs' claims against Judge Fish, the determination of whether Judge Fish was performing judicial functions is more difficult because Judge Fish could have been acting administratively in his role as Chief Judge. However, the Court concludes that, at a minimum, Plaintiffs' claims against Judge Fish are barred by qualified immunity because Plaintiffs' allegations fail to state a Fifth or Sixth Amendment claim.

When determining whether Judge Fish is entitled to qualified immunity, the Court must consider two issues: (1) whether Plaintiffs have alleged a violation of a clearly established constitutional right and (2) if so, whether Judge Fish's conduct was objectively unreasonable in light of the clearly established law at the time of the incident. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998). The Court begins its qualified immunity analysis with an examination of whether Plaintiffs have alleged a violation of a clearly established constitutional right. *See Wilson*, 526 U.S. at 609 (indicating that "[d]eciding the constitutional question before addressing the qualified immunity question . . . promotes clarity in the legal standards for official conduct").

The first issue the Court must consider to determine if Judge Fish is entitled to qualified immunity is whether Plaintiffs state a claim for a violation of a clearly established constitutional right. In their amended complaint, Plaintiffs allege violations of their Fifth Amendment rights to not be held to answer for a crime unless on presentment of indictment to a grand jury, their Fifth Amendment due process rights, their Sixth Amendment rights to effective assistance of counsel, and their Sixth Amendment rights to be informed of the charges against them. (*Pl.'s Am. Compl.* at 24.)

8

The claims Plaintiffs make against Judge Fish do not at all implicate these rights. Plaintiffs accuse Judge Fish of docketing Sam Odeh's coram nobis motion as a civil mandamus matter, fabricating a filing fee, and placing the motion on Judge Bleil's docket without authority to do so. (*See Judge Fish's Mot.* at 5.) Plaintiffs allegations against Judge Fish do not involve grand jury proceedings, ineffective assistance of counsel, or being informed of the charges against them.

Nor does the Court conclude that Plaintiffs have stated a due process claim. Procedural due process requires the government to utilize certain minimum procedural safeguards when depriving someone of liberty or of a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The government must afford notice and an opportunity to be heard before depriving an individual of a constitutionally protected interest. *See Bell v. Burson*, 402 U.S. 535, 542 (1971). The opportunity to be heard an individual receives must occur "at a meaningful time and in a meaningful manner." *Goss v. Lopez*, 419 U.S. 565, 581 (1975); *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965). "Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Accordingly, the amount of process that a particular individual receives depends on the specific interests at issue. *Mathews*, 424 U.S. at 334-35.

The Court concludes that Plaintiffs have not stated facts illustrating that Judge Fish's claimed actions deprived them of notice and an opportunity to be heard. Plaintiffs have not demonstrated why having Judge Means and Judge Bleil consider Sam Odeh's motion compromised Sam's opportunity to be heard. Thus, Plaintiffs do not state a due process claim. The Court concludes that

the facts alleged by Plaintiffs do not demonstrate violations of Plaintiffs' Fifth or Sixth Amendment rights. Therefore, the Court concludes that Judge Fish is entitled to qualified immunity against Plaintiffs' claims.

## II. Does the *Heck* Doctrine Bar Plaintiffs' Claims?

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87. Accordingly, this Court cannot award a judgment in favor of a party if such a judgment would "necessarily imply the invalidity of a conviction or pending charges." *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). All of Plaintiffs' allegations arise from Sam Odeh's underlying criminal conviction. Plaintiffs argue that actions taken in the course of the criminal prosecution violated their constitutional rights. If Plaintiffs' claims are taken as true, they necessarily impugn the validity of the conviction. Thus, before the Court can consider Plaintiffs' allegations, Plaintiffs must plead facts demonstrating that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Since Plaintiffs have failed to allege such facts, the Court concludes that the Federal Defendants' motion to dismiss should be granted. Because the Court finds that this ground, in addition to the immunity grounds discussed above, is a sufficient basis for dismissing Plaintiffs' claims against the Federal Defendants, the Court does not address the Federal Defendants' remaining arguments.

10

**CONCLUSIONS**

The Court concludes that absolute immunity bars Plaintiffs' claims against Judge Means and Judge Bleil and that qualified immunity bars Plaintiffs' claims against Judge Fish. In addition, the *Heck* doctrine bars Plaintiffs' claims against all the Federal Defendants.

**RECOMMENDATION**

The Court recommends that the District Court grant the Federal Defendants' motion to dismiss, including their individual motions to dismiss, and dismiss Plaintiffs' claims against the Federal Defendants with prejudice.

Signed this 14th day of August, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).